UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA SCHOUKER,<br><br>Plaintiff,<br><br>v.<br><br>SWARM INDUSTRIES, INC., et al.,<br><br>Defendants. | Case No. 24-cv-07373-JSC<br><br>**ORDER RE: MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF VIRGINIA**<br><br>Re: Dkt. No. 43 |

On October 22, 2024, Patricia Schouker filed suit against her former employer, Swarm Industries, Inc., and its CEO, Steven Bassi, Jr. (collectively, "Defendants"). Plaintiff seeks "declaratory and other relief from Defendants' months of discrimination against her, for Defendants' subsequent multiple acts of retaliation once she complained to [Swarm Industries], and for Defendants' other wrongful conduct against her." (Dkt. No. 15 ¶ 1.)[1] Defendants moved to dismiss the complaint. (Dkt. No. 39.) Then, Defendants moved to transfer this case to the Eastern District of Virginia where "Swarm Industries and non-party Swarm Technologies filed a suit against Schouker . . . based upon Schouker's actions in downloading and deleting proprietary information and trade secrets." (Dkt. No. 43 at 10.) Swarm Industries and Swarm Technologies filed the Virginia action approximately one month after Plaintiff filed the present complaint. Having carefully considered the parties' submissions, and having had the benefit of oral argument on March 27, 2025, the Court DENIES Defendants' motion to transfer venue.

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**BACKGROUND**

**I.   COMPLAINT ALLEGATIONS**

Swarm Industries "is a crowdsourced threat detection marketplace where security experts compete to detect and analyze threats." (Dkt. No. 15 ¶ 3.) Steven Bassi, Jr. is Swarm Industries' Founder and Chief Executive Officer. (*Id.*) Swarm Industries hired Plaintiff in July 2021. (*Id.* ¶ 4.) The following year, in July 2022, Swarm Industries promoted Plaintiff to Vice President of Alliances and Strategic Partnerships. (*Id.* ¶ 5.)

Plaintiff alleges in late 2022, she began raising ethical objections about Defendants' deceptive sales practices. (*Id.* ¶ 45.) In addition, for many months, Steve Laskowski—Swarm Industries' Chief Strategy Officer and Plaintiff's immediate supervisor—subjected Plaintiff "to demeaning, gender-based harassment and discrimination." (*Id.* ¶¶ 3, 38, 53.) Plaintiff's complaints about "Laskowski's various discriminatory actions and inactions against her were ignored by Bassi and [Swarm Industries]." (*Id.* ¶ 62.) Further, "[d]espite her transparency about . . . serious health concerns, Defendants refused to provide any meaningful accommodations or relief." (*Id.* ¶ 76.)

In August 2024, Swarm Industries fired Plaintiff. (*Id.* ¶ 12.) Swarm Industries "falsely claim[ed] that [Plaintiff] was fired because she had violated confidentiality policies by forwarding certain emails to her personal email address." (*Id.*) "However, contemporaneous evidence shows that this justification was just a pretext designed to conceal the retaliatory motive behind her dismissal." (*Id.*)

**II.   PROCEDURAL HISTORY**

Two months after her termination, Plaintiff filed the present complaint against Swarm Industries and Mr. Bassi.[2] Plaintiff's 12-count complaint alleges discrimination based on sex and disability, harassment based on sex and disability, unlawful retaliation, intentional and negligent infliction of emotional distress, and breach of contract. She also seeks declaratory judgment "that she did not violate her duties of confidentiality and loyalty, or any related statutory duty, to

---

[2] Plaintiff also named Mr. Laskowski as a defendant. (Dkt. No. 15 ¶ 3.) In February 2025, Plaintiff voluntarily dismissed her claims against Mr. Laskowski. (Dkt. No. 42 at 2.)

[Swarm Industries]." (Dkt. No. 15 ¶ 149.)

On November 15, 2024, approximately a month after Plaintiff filed the present complaint, Swarm Industries and Swarm Technologies, Inc. sued Plaintiff in the Eastern District of Virginia ("Virginia action").[3] The Virginia action is based on Plaintiff's "downloading and deleting proprietary information and trade secrets —much of it owned and held by [Swarm Technologies]—and forwarding company emails to her personal email." (Dkt. No. 51-1 ¶ 3.) The six-count complaint alleges (1) breach of contract; (2) violation of the Defend Trade Secrets Act; (3) violation of the Virginia Uniform Trade Secrets Act; (4) violation of the Computer Fraud and Abuse Act; (5) violation of the Virginia Computer Crimes Act; and (6) breach of the duty of loyalty. (*Id.* ¶ 6.)

In January 2025, Defendants in the present action moved to dismiss Plaintiff's complaint. (Dkt. No. 39.) Then, in February 2025, Defendants moved to transfer the present action to the Eastern District of Virginia. (Dkt. No. 43.)

**MOTION TO TRANSFER**

Defendants argue "[t]ransfer to the Eastern District of Virginia is warranted under 28 U.S.C. § 1404(a) because Schouker's claims could have been brought there originally, and transfer would convenience the parties and witnesses and further the interests of justice." (Dkt. No. 43 at 8.) Before turning to section 1404(a), the Court addresses Plaintiff's invocation of the first-to-file rule.

### A.     First to File Rule

Plaintiff asks the Court to enjoin Defendants from prosecuting their case in the Eastern District of Virginia pursuant to the first-to-file rule, a "generally recognized doctrine of federal comity" that allows a district court to decline jurisdiction over an action "when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982) (citations omitted). But Plaintiff did

---

[3] The Court grants Plaintiff's request to judicially notice the Virginia action complaint at Docket No. 55-1. *See Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (We may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts.").

3

not move for an injunction; rather, she requested one as part of her opposition to the motion to transfer. As Plaintiff has not properly moved, the Court need not consider her request.

### B. Section 1404(a)

Defendants move to transfer this case to the Eastern District of Virginia under 28 U.S.C. § 1404(a). Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (cleaned up).

In this case, Plaintiff does not contend the Eastern District of Virginia lacks jurisdiction over Defendants. (Dkt. No. 49 at 11.) Because the parties agree the suit "might have been brought" in the Eastern District of Virginia—a requirement under 28 U.S.C. § 1404(a)—the Court focuses it analysis on whether transfer serves "the convenience of parties and witnesses" and "the interest of justice." *See* 28 U.S.C. § 1404(a). For this analysis, the Court may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Easton v. Wells Fargo & Co.*, 2020 WL 3639934, at *2 (N.D. Cal. July 6, 2020). "No single factor is dispositive." *Ctr. for Biological Diversity v. Kempthorne*, No. C08-1339CW, 2008 WL 4543043, at *2 (N.D. Cal. Oct. 10, 2008); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (cleaned up) ("[T]he district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."). Because "great weight is generally accorded plaintiff's choice of forum," *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), the burden is on the movant to demonstrate that jurisdiction and proper venue would exist in the district to which a transfer is requested and that the balance of conveniences favors transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279

4

1  (9th Cir. 1979). The Court addresses the factors in turn.

2            **1.     Plaintiff's Choice of Forum**

3  "[A] plaintiff's choice of forum is entitled to greater deference when the plaintiff has

4  chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). "[W]here the

5  plaintiff's venue choice is not its residence," "[t]he degree to which courts defer to the plaintiff's

6  venue choice is substantially reduced." *Duffy v. Facebook, Inc.*, No. 16-CV-06764-JSC, 2017 WL

7  1739109, at *4 (N.D. Cal. May 4, 2017) (quotation marks omitted). And "[w]here the degree of

8  deference given to a plaintiff's choice of venue is reduced, the defendant's burden to overcome the

9  plaintiff's choice is also reduced." *Id.* "In judging the weight to be accorded [the plaintiff's]

10 choice of forum, consideration must be given to the extent of both [the parties'] contacts with the

11 forum, including those relating to [the plaintiff's] cause of action." *Lou,* 834 F.2d at 739.

12 In this case, Plaintiff's chosen venue—the Northern District of California—is not her

13 residence. She resides in Virginia. (Dkt. No. 15 ¶ 15; Dkt. No. 43-1 ¶ 7 (Swarm Industries

14 "issued payroll checks to Ms. Schouker in Virginia and withheld Virginia state taxes").) That

15 said, Plaintiff had contact with California. She had "clients in California" and attended "numerous

16 conferences that took place in California" for work. (Dkt. No. 50 ¶¶ 4, 5.) And importantly,

17 Defendants also had contact with California. On Plaintiff's employment agreement, Swarm

18 Industries' address is in San Francisco, California. (Dkt. No. 50-1 at 2.) And that employment

19 agreement selects California law as the governing law. (Dkt. No. 50-1 at 2 at 3 ("The validity,

20 interpretation, construction and performance of this Agreement . . . shall be governed, construed

21 and interpreted in accordance with the laws of the state of California.").) Further, during her

22 employment with Swarm Industries, Plaintiff "interacted with Bassi numerous times while he was

23 in California." (Dkt. No. 50 at 3.) Those interactions include the RSA Conferences where, as

24 alleged in the complaint, "Laskowski and Bassi committed discriminatory behavior." (Dkt. No.

25 50 ¶ 4; Dkt. No. 15 ¶¶ 7, 55, 84.)

26 Defendants seek to downplay their California contacts by emphasizing that "[n]o

27 employment records for Swarm Industries, Inc. are maintained or administered in California, and

28 no employees physically work at the San Francisco business address for Swarm Industries, Inc."

1    (Dkt. No. 43-1 ¶ 15.) But they do not dispute Plaintiff's allegation that Swarm Industries'

2    principal place of business is in San Francisco, California. (Dkt. No. 15 ¶ 15.)

3          Defendants also cite cases like *Duffy* to argue transfer is appropriate because "the

4    underlying acts of discrimination occurred outside the chosen forum and the only connection to

5    the forum [is] the defendant's headquarters." (Dkt. No. 55 at 12 (quoting *Duffy*, 2017 WL

6    1739109, at *5).) But in *Duffy*, the plaintiff suing Facebook, Inc. and two if its managers "worked

7    as an engineer at Facebook's Data Center Facility in Forest City, North Carolina." *Id.* at *1. In

8    exercising its discretion to transfer the case to North Carolina, the court observed the relevant acts

9    were those of North Carolina employees at the North Carolina facility. *Id.* at *5. Here, in

10   contrast, Plaintiff did not work at a Swarm Industries office in Virginia. Rather, as a remote

11   employee, Plaintiff "performed [her] work at various places . . . includ[ing] Virginia, California,

12   and Europe." (Dkt. No. 43-1 ¶ 4; 50 ¶ 4.) Mr. Bassi also resided outside of Virginia—in Puerto

13   Rico. (Dkt. No. 55-1 ¶ 3.) Mr. Bassi and his colleagues communicated with Plaintiff "via daily

14   video calls, email, and Slack." (Dkt. No. 43-1 ¶ 8; Dkt. No. 15 ¶ 64 (alleging Plaintiff relayed

15   concerns to Mr. Bassi via email and Slack).) While Mr. Bassi "met with Ms. Schouker personally

16   in Virginia regarding PolySwarm matters," (Dkt. No. 43-1 ¶ 9), Mr. Bassi also "met with

17   Schouker in California at each of the annual RSA conferences in 2022, 2023, and 2024." (Dkt.

18   No. 55-1 ¶ 7.) So, unlike in *Duffy*, there is no clear "locus of the discrimination" in this case. *Id.*

19   at *5. And at least some of the alleged discrimination took place in California. (Dkt. No. 15 ¶¶ 7,

20   55, 84.)

21         Given the remote nature of Plaintiff's work and given Defendants' connections to

22   California—particularly the employment agreement's selection of California law as the governing

23   law—Plaintiff's choice of forum is entitled some deference, even though she does not reside in

24   California.

25           **2.**     **Convenience of Parties and Witnesses**

26       "For this factor, the Court considers the relative convenience of each district court and

27   finds in favor of transfer when the transferee court will increase the parties' and witnesses' overall

28   convenience." *Duffy*, 2017 WL 1739109, at *5. "The convenience of witnesses is often the most

important factor in resolving a motion to transfer." *Bunker v. Union Pac. R.R. Co.*, No. C 05-04059 JSW, 2006 WL 193856, at *2 (N.D. Cal. Jan. 23, 2006). "The trial court looks at who the witnesses are, where they are located, and the relevance of their testimony." *Id.* Specifically, the Court accords "weight to the convenience of non-party witnesses in its analysis." *Duffy*, 2017 WL 1739109, at *5. "[T]he convenience of a party's employee witnesses is entitled to little weight because they can be compelled by their employers to testify regardless of venue." *Thanos v. Unum Life Ins. Co.*, No. 15-CV-03616-YGR, 2015 WL 5770786, at *3 (N.D. Cal. Oct. 2, 2015).

As to the parties' convenience, this factor weighs slightly against transfer. While the Eastern District of Virginia appears convenient for Plaintiff, who resides in Alexandria, Virginia, (Dkt. No. 15 ¶ 15), Plaintiff elected to sue in a different district. Meanwhile, Swarm Industries' principal place of business is in San Francisco, California. (*Id.* ¶ 16.) Mr. Bassi—who lives in Puerto Rico—attests "no employees physically work" in the San Francisco office. (Dkt. No. 43-1 ¶¶ 2, 15.) Notwithstanding Mr. Bassi's personal residence and his assertion about the status of the San Francisco office, Mr. Bassi is the CEO of a company headquartered in California, so Defendants' contention that California is inconvenient is unpersuasive.

As for witnesses' convenience, this factor is neutral. The majority of witnesses the parties identify are employees of Swarm Industries, so their convenience is afforded little weight in the section 1404(a) analysis. *Thanos*, 2015 WL 5770786, at *3. In any event, the employee witnesses reside in neither California nor Virginia. (Dkt. No. 43-1 ¶ 14 ("It is also my understanding that Steve Laskowski and Nick Davis reside in Puerto Rico; Alex Jardine resides in Dubai; Reuben Burrows-Davis resides in Ireland; Mike Anderson resides in Louisiana; the individual referred to as Nicki Black resides in North Carolina; Amit Khandekar resides in Canada; and Margie Larson resides in Minnesota while spending winter months in Florida.").) Defendants identify a nonparty witness, Erol Weiss, whose LinkedIn profile states he resides in Florida. (Dkt. No. 43-2 ¶ 6.) If Mr. Weiss resides in Florida, he is outside the Eastern District of Virginia's subpoena power. Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides.") So, Mr. Weiss's residence is entitled little weight. The Court also affords little weight to Plaintiff's counsel attestation that

7

1    Plaintiff "intends to depose agents of Anomali regarding her allegations that she lost commissions
2    and sales she rightfully earned," (Dkt. No. 51 ¶ 3)—in part because counsel does not specify
3    where Anomali is located.
4        At oral argument, Defendants' counsel represented that in reviewing Plaintiff's initial
5    disclosures, there are additional witnesses who appear to reside in or near Virginia.  This
6    information is not before the Court and regardless, does not change the Court's conclusion that the
7    convenience factors are neutral or else weigh slightly against transfer.

### 3. Ease of Access to Evidence

In this case, the parties agree "the evidence is mostly digital or testimonial."  (Dkt. No. 49 at 16; Dkt. No. 43 at 19 ("[M]ost of the evidence is likely to be electronic or verbal testimony.").) And "[t]he weight of this factor has decreased as technological advances in document storage and retrieval have greatly reduced the burden of transporting documents between districts." *Duffy,* 2017 WL 1739109, at *4.  So, this factor is neutral.

### 4. Forum's Familiarity with Applicable Law

In addition to federal discrimination claims, Plaintiff alleges violations of the California Fair Employment and Housing Act and the California Labor Code.  And because Plaintiff's employment agreement selects California law as the governing law, (Dkt. No. 50-1 at 2), her contract and emotional distress claims are interpreted in accordance with California law.  Because most of Plaintiff's claims allege a violation of California law or involve interpreting California law, this factor weighs against transfer.  As Defendants acknowledge, "this Court 'is likely more familiar with the nuances of California law than would be a federal court in another state.'"  (Dkt. No. 43 at 20 (quoting *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 940 (N.D. Cal. 2020)).

### 5. Feasibility of Consolidation

"Where the factual allegations asserted in multiple actions are identical and there is significant overlap between the causes of action alleged, the feasibility of consolidation of other claims factor weighs in favor of the cases being brought in the same district." *Herman v. W. Union Co.*, No. 2:17-CV-00650-CBM-AJW, 2017 WL 5643145, at *2 (C.D. Cal. Mar. 30, 2017).

Defendants assert—and Plaintiff does not meaningfully contest—that consolidation is feasible in the Eastern District of Virginia. In contrast, it is unclear whether consolidation is feasible here because the Virginia action includes non-party Swarm Technologies, a Puerto Rican corporation with its principal place of business in Puerto Rico. (Dkt. No. 51-1 ¶ 8.) Plaintiff responds that Swarm Industries added Swarm Technologies as a party in the Virginia action to prevent consolidation. (Dkt. No. 55-3 at 5 (Swarm Industries' draft complaint, which counsel sent prior to filing of either action, did not include Swarm Technologies as a defendant).)

Regardless, while there are overlapping factual allegations, the cases raise distinct legal issues. The present action is about the circumstances of Plaintiff's employment over a two-plus year period. The Virginia action is about whether Plaintiff violated the confidentiality agreement she signed, misappropriated trade secrets, and exceeded her authorized access on her computer in the final days of her employment. As a result—aside from Plaintiff's request for discretionary declaratory relief—there is not "significant overlap between the causes of action alleged." *See Herman*, 2017 WL 5643145, at \*2. So, this factor does not favor consolidation in either district.

### 6. Local Interest in the Controversy

Because Swarm's principal place of business is in California, California has some interest in the case. And because Plaintiff is a resident of Virginia, Virginia has some interest in the case. However, as discussed above, the events giving rise to this dispute occurred in numerous locations and also via email, Slack, and other online interactions. So overall, this factor is neutral.

### 7. Relative Court Congestion

"This factor examines whether a trial may be speedier in another court because of its less crowded docket." *Brown v. Abercrombie & Fitch Co.*, No. 4:13-CV-05205 YGR, 2014 WL 715082, at \*6 (N.D. Cal. Feb. 14, 2014). "To measure congestion, courts compare the two fora's median time from filing to disposition or trial." (*Id.*) Defendants note that in 2024, the median time from filing a civil case to trial was 47.9 months in the Northern District of California and 14.6 months in the Eastern District of Virginia. (Dkt. No. 43-3, 43-4.) And the median filing time from the filing of a civil case to disposition was 20.6 months in the Northern District of California and 5.3 months in the Eastern District of Virginia. (*Id.*) Plaintiff "does not dispute the case

9

statistics." (Dkt. No. 49 at 18.) So, this factor weighs in favor of transfer.

### 8. Conclusion as to Convenience Factors

That many of the factors are neutral reflects the fact that this dispute—involving parties and witnesses working remotely, communicating via online platforms, and meeting in multiple locations—was not limited to a single forum. Rather, the alleged discrimination occurred over a several-year period in various forums, including online. And while court congestion weighs in favor of transferring the case, the Court's familiarity with the governing law weighs against transfer. In light of the overall balance on most factors, the Court defers to Plaintiff's choice of forum—which, while not her residence—reflects Defendants' contacts with California, including its selection of California law as the governing law and San Francisco as Swarm Industries' principal place of business. *See Decker Coal*, 805 F.2d at 843 ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). Put another way, Defendants as the movants did not meet their burden of demonstrating the balance of conveniences favors transfer. *See Commodity Futures Trading*, 611 F.2d at 279.

### CONCLUSION

For the reasons stated above, Defendants' motion to transfer venue to the Eastern District of Virginia is DENIED.

This Order disposes of Docket No. 43.

**IT IS SO ORDERED.**

Dated: March 28, 2025

JACQUELINE SCOTT CORLEY
United States District Judge