1

2

3

4              UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    PATRICIA SCHOUKER,                    Case No.  24-cv-07373-JSC

8              Plaintiff,

9         v.                              **ORDER DENYING IN PART AND
                                          GRANTING IN PART DEFENDANT'S
10                                         MOTION TO DISMISS**
     SWARM INDUSTRIES, INC., et al.,
                                          Re: Dkt. No. 39
11             Defendants.

12

13

14         Patricia Schouker alleges 12 causes of action against her former employer, Swarm

15   Industries, Inc. ("PolySwarm"), and PolySwarm's CEO, Steven Bassi, Jr.  Counts One through

16   Seven allege gender and disability discrimination, harassment, retaliation, and failure to prevent

17   discrimination and harassment in violation of Title VII of the Civil Rights Act and California's

     Fair Employment and Housing Act ("FEHA").  Counts Eight, Nine, Ten, and Twelve allege
18
     intentional and negligent infliction of emotional distress, breach of contract, and a California
19
     Labor Code retaliation violation, respectively.  Count Eleven seeks a declaratory judgment.
20
     Defendants move to dismiss all counts.  Having considered the complaint and the parties' briefs,
21
     and having had the benefit of oral argument on March 27, 2025, the Court GRANTS in part and
22
     DENIES in part Defendants' motion to dismiss.  Plaintiff plausibly alleges gender discrimination
23
     and harassment, as well as whistleblower retaliation in response to her protected activity (Counts
24
     One, Two, Four, Six, and Twelve).  However, she fails to plausibly plead disability discrimination
25
     and harassment, FEHA retaliation, tort liability, and breach of contract (Counts Three, Five,
26
     Seven, Eight, Nine, and Ten).  And as pled, Plaintiff is not entitled to declaratory relief because
27
     she seeks to remedy a past wrong (Count Eleven).
28

# FIRST AMENDED COMPLAINT ALLEGATIONS

PolySwarm, a company with approximately 30-40 employees, "is a crowdsource threat detection marketplace where security experts compete to detect and analyze threats." (Dkt. No. 15 ¶ 3.) PolySwarm hired Plaintiff in July 2021 as its Director of Business Development and Strategy. (*Id.* ¶ 36.) In this role, Plaintiff managed the sales cycle including pre- and post-sales engagement with customers. (*Id.* ¶ 36.) One year later, in July 2022, Plaintiff was promoted to Vice President of Alliance and Strategic Partnership. (*Id.* ¶ 41.) Plaintiff's responsibilities expanded to include more market strategy. (*Id.*) "With her promotion," which was "memorialized in an email," Plaintiff "was eligible to earn a commission split of ten percent (10%) for direct deals and five percent (5%) for partner deals." (*Id.* ¶¶ 42-43.)

During her tenure at PolySwarm, Plaintiff's direct supervisor was Steve Laskowski, PolySwarm's Chief Strategy Officer.[1] (*Id.* ¶¶ 19, 38.) After her promotion, Plaintiff also began to work closely with PolySwarm's CEO, Mr. Bassi. (*Id.* ¶ 41.) Plaintiff "was the only full-time female employee at PolySwarm directly reporting to Laskowski" and "the only woman in upper management." (*Id.* ¶ 39.) Additionally, Plaintiff "was one of only two female full-time employees" for most of her tenure at PolySwarm. (*Id.* ¶ 4.)

In late 2022, Mr. Laskowski and Mr. Bassi began "repeatedly pressur[ing]" Plaintiff "to promote and sell products based on features that did not exist." (*Id.* ¶ 45.) Plaintiff "regularly raised concerns regarding these unethical sales practices." (*Id.* ¶ 48.) She also raised concerns about Mr. Bassi "falsely affirming" to the Department of Homeland Security ("DHS") "that PolySwarm had no connections to prohibited foreign entities." (*Id.* ¶¶ 63-66.) Both Mr. Laskowski and Mr. Bassi dismissed her concerns and made derogatory comments. (*Id.* ¶ 50.)

In addition, during Plaintiff's tenure at PolySwarm, Mr. "Laskowski persistently subjected [her] to demeaning, gender-based harassment and discrimination," and "undercut [her] authority by shifting decision-making power to male colleagues . . . effectively stripping her of the autonomy expected in her senior role." (*Id.* ¶¶ 53, 59.) He assigned her "demeaning tasks far

---

[1] Plaintiff voluntarily dismissed without prejudice her claims against Steve Laskowski. (Dkt. No. 42.)

United States District Court
Northern District of California

below her position and expertise," "made sexist and inappropriate comments," and "regularly berated her in front of the Sales Team and Customer Success Team, using profanity and harsh language . . . not used with her male colleagues." (*Id.* ¶¶ 54, 56, 60.) In January 2024 Mr. Laskowski "unilaterally and significantly reduced [Plaintiff's] commission structure, slashing her commissions from 5-10% to 0.7%." (*Id.* ¶ 72.)

Plaintiff "raised multiple concerns regarding gender and disability discrimination to Bassi," who "willingly took on the human resources role" for the majority of Plaintiff's tenure at PolySwarm. (*Id.* ¶¶ 81-82.) Mr. Bassi neither "investigate[d] her complaints" nor sought to remedy the "unhealthy and toxic work environment" by acting "to reprimand Laskowski or prevent his discrimination and retaliation from continuing." (*Id.* ¶83.) Instead, Mr. Bassi "dismissed her complaints" and "did not take any action to protect [Plaintiff] or address [her] concerns." (*Id.* ¶ 82, 87.)

Plaintiff also alleges she suffered from health-related issues including high blood pressure, panic attacks, and chest pains. (*Id.* ¶ 76.) "Despite her transparency about these serious health concerns, Defendants refused to provide any meaningful accommodations or relief." (*Id.*)

In August 2024, PolySwarm fired Plaintiff. (*Id.* ¶ 12.) PolySwarm "falsely claim[ed] that [Plaintiff] was fired because she had violated confidentiality policies by forwarding certain emails to her personal email address." (*Id.*) "However, contemporaneous evidence shows that this justification was just a pretext designed to conceal the retaliatory motive behind her dismissal." (*Id.*)

## DISCUSSION

### A.  Rule 8(a)(2) Dismissal

Defendants initially move to dismiss under Rule 8 arguing the entire complaint is an improper shotgun pleading. Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A Rule 8 dismissal is appropriate when a complaint consists of such overly broad and confusing allegations that a defendant cannot adequately respond. *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766 AG (ANx), 2010 WL 2674456 at *4 (C.D.

Cal. June 30, 2010) ("Shotgun pleadings are pleadings that overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations.").

Defendants' contention the complaint "render[s] it nearly impossible for the Defendants to sufficiently determine the basis for each count" is unpersuasive. (Dkt. No. 39 at 4.)  Though the complaint incorporates "Facts Common to All Causes of Action" into each of the 12 counts, the complaint provides proper notice as to which factual allegations correspond to which counts.[2] That is, the common facts are organized by headings specifying their relevance to the various counts.  For example, Counts Three and Five—alleging discrimination and harassment based on disability—correspond with the complaint subheading "Defendants Cause, and Then Entirely Fail to Accommodate, Ms. Schouker's Medical Condition."  (Dkt. No. 15 at 18-20.)  As Defendants acknowledge, "incorporation by reference is not *per* se improper," so long as adequate notice of the factual premise of a claim is provided.  (Dkt. No. 39 at 14.)  *See also Apothio, LLC v. Kern Cnty.*, 599 F. Supp. 3d 983, 1001 (E.D. Cal. 2022) ("Although aspects of Plaintiff's complaint are in the form of a shotgun pleading, the complaint is sufficiently framed as to give notice to County Defendants about the nature of the claims asserted against them.").

Moreover, Defendants' motion demonstrates they could determine which facts are incorporated into each count.  For example, in addressing Count Four alleging harassment based on gender, Defendants write, "For her gender-based claim, to the extent Schouker is relying on allegations under the header "Defendants' Many Months of Gender Harassment Towards Ms. Schouker . . ." and proceed to address those allegations.  (Dkt. No. 39 at 23.)  Because the complaint does not "deprive[] Defendants from knowing the factual bases of each of the causes of actions," *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-CV-0424-BAS-DDL, 2022 WL 17330467 at *15 (S.D. Cal. Nov. 29, 2022), the Court DENIES Defendants' request to dismiss the entire complaint pursuant to Rule 8.  *See In re Meta Pixel Tax Filing Cases,* 724 F. Supp. 3d 987, 1005 (N.D. Cal. 2024) (denying Rule 8 dismissal when complaint was

[2] As discussed below, Plaintiff does not provide proper notice as to the intentional and negligent infliction of emotional distress claims.

1    decipherable despite incorporation by reference).

2    **B. Rule 12(b)(6) Dismissal**

3        Defendants further argue all counts should be dismissed under Rule 12(b)(6) for failing to

4    state a claim upon which relief can be granted.  "Dismissal under Rule 12(b)(6) is proper when the

5    complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support

6    a cognizable legal theory."  *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

7        **1. Gender Discrimination under Title VII and FEHA (Counts One and Two)**

8        Counts One and Two allege gender discrimination in violation of Title VII and FEHA.  A

9    gender discrimination claim requires the same prima facie showing under Title VII and FEHA.

10    *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1218 (9th Cir. 1998).  Plaintiffs may establish a

11    prima facie case based on circumstantial evidence by showing:

12            (1) they are members of a protected class;

13            (2) they were qualified for their positions and performing their jobs

14            satisfactorily;

15            (3) they experienced adverse employment actions; and

16            (4) similarly situated individuals outside their protected class were

17            treated more favorably, or other circumstances surrounding the

18            adverse employment action give rise to an inference of

19            discrimination.

20    *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

21        Defendants do not dispute the first two elements, nor could they.  Plaintiff is a member of a

22    protected class.  *See* 42 U.S.C.A. § 2000e-2(a) (prohibiting employers from discriminating

23    "against any individual . . . because of such individual's . . . sex").  And Plaintiff plausibly alleges

24    she was qualified for her position and performing her job satisfactorily.  (Dkt. No. 15 ¶¶ 33-35, 40,

25    44 (alleging Plaintiff "was selected as one of the 'top 40 most influential individuals in the energy

26    sector'" and "consistently received positive performance evaluations and commendations for her

27    work").)

28        As to the third element, Plaintiff alleges several adverse employment actions that meet the

United States District Court
Northern District of California

Supreme Court's broad definition. *See Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024) (plaintiffs "must show some harm respecting an identifiable term or condition of employment," but need not show "the harm incurred was 'significant.' Or serious, or substantial, or any other similar adjective suggesting the disadvantage to the employee must exceed a heightened bar"). "[A]ssigning more, or more burdensome, work responsibilities," *Davis v. Team Elec. Co*., 520 F.3d 1080, 1089 (9th Cir. 2008), and "termination, demotion, . . . adverse job assignments, official discipline, and significant changes in compensation or benefits" are examples of adverse job assignments. *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017). Here, Plaintiff alleges the following adverse employment actions: termination (Dkt. No. 15 ¶¶ 97-98); diminishment and reassignment of professional responsibilities (*id.* ¶ 59); a commission cut (*id.* ¶ 72); and adverse job assignments such as picking up coffee and watching Mr. Laskowski's dogs (*id.* ¶ 60).

In addition, "workplace harassment, if sufficiently severe or pervasive, may in and of itself constitute an adverse employment action." *Kelley v. The Conco Companies*, 196 Cal. App. 4th 191, 212 (2011) (cleaned up). Plaintiff plausibly alleges the derogatory comments (*id.* ¶ 50), hostile and dismissive attitudes (*id.*), and inappropriate and sexist comments (*id.* ¶¶ 54-60) were sufficiently pervasive so as to "materially affect the . . . conditions of [Plaintiff's] employment." *See Chuang*, 225 F.3d at 1126. So, Plaintiff plausibly alleges the harassing conduct also constituted an adverse employment action. *See Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d 1076, 1092 (S.D. Cal. 2020) (quoting *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1036 (2005)) ("[A] court can consider the 'totality of the circumstances to determine whether an employee has been subject to treatment that materially affects the terms and conditions of employment.'").

Finally, as to the fourth element, Plaintiff's allegations that similarly situated male employees were treated more favorably "give rise to an inference of discrimination." (*Id.* ¶¶ 56, 59, 61.) *See Hawn*, 615 F.3d at 1156. For example, Plaintiff alleges Mr. Laskowski's "language and outbursts were directed at her specifically and were not used with her male colleagues" (*id.* ¶ 56), her male counterparts did not experience the same pushback when raising concerns about

6

United States District Court
Northern District of California

sales practices (*id.* ¶¶ 49-50), her male colleagues were not undermined as Plaintiff was in their role and authority (*id.* ¶ 59), and her male colleagues did not face the same level of resistance about taking time off (*id.* ¶ 79).  From these allegations, it is reasonable to infer Plaintiff experienced the adverse employment actions described above because of her gender.

Defendants' arguments to the contrary are not persuasive.  First, Defendants contend Mr. Laskowski was not a decisionmaker and "[a] gender discrimination claim based on comments by co-workers does not survive a motion to dismiss where the comments were made by a non-decisionmaker." (Dkt. No. 39 at 17.)  But Plaintiff alleges Mr. Laskowski reassigned her job responsibilities to male colleagues, gave her adverse job assignments like caring for his dogs, and "unilaterally" reduced Plaintiff's commission payments—all decisions about the terms and conditions of her employment.  (Dkt. No. 15 ¶¶ 59, 60, 72.)  So, drawing all inferences in Plaintiff's favor, Mr. Laskowski was a decisionmaker.  Further, the comments Mr. Laskowski made to Plaintiff—for example, "Why are you so salty?" and "She's not qualified to do this" (Dkt. No. 15 ¶ 56)—support an inference Mr. Laskowski's adverse employment actions were because of Plaintiff's gender.

Defendants further assert the complaint "lacks any allegations showing or supporting the inference that Bassi treated Schouker in any way differently because of her gender." (Dkt. No. 39 at 17.)  This assertion overlooks the complaint's allegations.  For example, Plaintiff alleges "Bassi consistently dismissed her input, belittling her concerns both public and privately" and "undermined her credibility . . . making derogatory comments" that perpetuated a "hostile and dismissive attitude" which "was particularly directed at Ms. Schouker, while her male counterparts who expressed the same concerns did not experience the same level of dismissal or professional undermining." (Dkt. No. 15 ¶ 50.)  These allegations support an inference the adverse employment actions Mr. Bassi implemented were because of Plaintiff's gender.

So, the Court DENIES Defendants' motion to dismiss Counts One and Two.

**2.  FEHA Discrimination, Harassment, and Hostile Work Environment Based on Disability (Counts Three and Five)**

Count Three alleges disability discrimination in violation of Cal. Gov. Code § 12940(a)

and Count Five alleges harassment and hostile work environment based on disability in violation of Cal. Gov. Code. § 12940(j).  Plaintiffs may establish a prima facie case for disability discrimination by showing:

> (1) They suffered from a disability;
>
> (2) they could perform the essential duties of the job with or without reasonable accommodation; and
>
> (3) they experienced adverse employment actions because of their disability.

*Kaur v. Foster Poultry Farms LLC*, 83 Cal. App. 5th 320, 344 (2022). Defendants move to dismiss on the ground Plaintiff has not alleged the first element—a qualifying disability.  The Court agrees.

FEHA defines a disability as a physical or mental impairment that limits a major life activity, without requiring the limitation to be substantial.  Cal. Gov. Code § 12926.1(c); *Jensen v. Wells Fargo Bank,* 85 Cal. App. 4th 245, 258 (2000).  While this standard is broad, Plaintiff fails to plead facts that support a plausible inference she was disabled within the meaning of FEHA including what major life activities her disability impacted.  The complaint's references to "health-related issues," "serious health concerns," "health challenges," and "stress and health issues" are too vague to support FEHA liability.  (Dkt. No. 15 ¶¶ 76, 77, 80.)

Plaintiff also alleges she suffered from "high blood pressure, panic attacks, and chest pains."  (Dkt. No. 15 ¶ 76.)  As Plaintiff observes, panic attacks "have been recognized as physical disabilities under FEHA."  *Herrera v. Nationwide Mut. Ins. Co.*, No. LA-CV-15-09023 JAK (JEMX), 2017 WL 11628157 at *6 (C.D. Cal. June 9, 2017) (citing *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 694 (2009)).  But in *Roby*, the plaintiff detailed how such panic attacks "restricted her ability to perform her job."  47 Cal. 4th at 694 ("During a panic attack, [the plaintiff] suffered heart palpitations, shortness of breath, dizziness, trembling, and excessive sweating.").  Here, Plaintiff's allegations do not support a plausible inference her panic attacks or other health-related issues limited a major life activity.

Rather than plausibly alleging her health conditions impacted a major life activity, Plaintiff

United States District Court
Northern District of California

1    alleges "[d]espite her health challenges, Ms. Schouker's work performance remained exceptional,

2    with none of her responsibilities slipping." (Dkt. No. 15 ¶ 80.) Plaintiff also assured her team

3    "that her responsibilities would not be affected" by her traveling to receive medical treatment.

4    (Dkt. No. 15 ¶ 78.) The only plausible inference from these allegations is that Plaintiff's health

5    issues did not limit her ability to perform her job. And while Plaintiff alleges she "informed the

6    team that she would need to take paid time off (PTO) to recover from medical treatment" (*id.* ¶

7    79), she does not allege the medical treatment was for a FEHA-qualifying disability. So, she does

8    not plausibly allege a disability discrimination claim.

9          And because Plaintiff does not plausibly allege she had a FEHA-qualifying disability

10   FEHA, her claim for hostile work environment based on disability cannot survive. *Cornell v.*

11   *Berkeley Tennis Club*, 18 Cal. App. 5th 908, 926-27 (2017). So, the Court GRANTS Defendants'

12   motion to dismiss Counts Three and Five.

### 3.  FEHA Harassment and Hostile Work Environment Based on Gender (Count Four)

15         Count Four alleges harassment and hostile work environment based on gender in violation

16   of Cal. Gov. Code § 12940(j). Plaintiff brings Count Four against both PolySwarm and Mr. Bassi

17   in his individual capacity. Plaintiffs may establish a prima facie case of harassment by showing:

18         (1) They are members of a protected class;

19         (2) they were subjected to unwelcome harassment;

20         (3) the harassment was based on their protected status;

21         (4) the harassment unreasonably interfered with their work

22         performance by creating an intimidating, hostile, or offensive work

23         environment; and

24         (5) defendants are liable for the harassment.

25   *Galvan v. Dameron Hosp. Assn.*, 37 Cal. App. 5th 549, 563 (2019).

#### a.  PolySwarm

27         Defendants contend the complaint's allegations "fail to rise to 'sufficiently severe or

28   pervasive' conduct." (Dkt. No. 39 at 22.) The Court disagrees. "[H]arassment creates a hostile

. . . work environment . . . when the harassing conduct sufficiently offends, humiliates, distresses, or intrudes upon its victim, so as to disrupt the victim's emotional tranquility in the workplace, affect the victim's ability to perform the job as usual, or otherwise interfere with and undermine the victim's personal sense of wellbeing." *Ortiz v. Dameron Hosp. Assn.*, 37 Cal. App. 5th 568, 582 (2019). Courts have declined to find a hostile work environment if allegations consist only of "harassment that is occasional, isolated, sporadic, or trivial." *Hughes v. Pair*, 46 Cal. 4th 1035, 1043 (2009). "[FEHA] is not a civility code and is not designed to rid the workplace of vulgarity." *Lyle v. Warner Bros. Television Prods.*, 38 Cal. 4th 264, 295 (2006).

Drawing all reasonable inferences in Plaintiff's favor, the allegations support an inference the harassing conduct unreasonably interfered with Plaintiff's work performance. Plaintiff alleges the following as examples of the harassing conduct she experienced at PolySwarm:

- Mr. Laskowski made patronizing remarks like, "she's not qualified to do this," "Why are you so salty?" and "you're too expensive." (¶ 56.)

- Mr. Laskowski used profanity and harsh language such as "I don't know why the fuck I have to tell you how to do things" and "You fucking don't get it." (*Id.*)

- Mr. Laskowski made "[s]exist and inappropriate comments," including referring to her as a "pretty face" with prospective clients and asking her to wear a wedding ring to "keep prospects and customers focused." (Dkt. No. 15 ¶¶ 54-55.)

- "At conferences and customer/prospect dinners Laskowski often reduced her role to superficial tasks and, told her to, 'Go, go, go do what it takes, he likes you,' suggesting that her ability to secure business depended entirely on her attractiveness to male clients." (*Id.* ¶ 55.)

- Mr. Laskowski "frequently joined calls uninvited, adding himself to [Plaintiff's] calendar invites without her consent—behavior he did not impose on any of her male colleagues." (*Id.* ¶ 57.)

- In some meetings with clients, Mr. Laskowski "cut her off whenever she attempted to speak." (*Id.*)

Drawing reasonable inferences from these allegations in Plaintiff's favor, she plausibly

10

1    alleges the harassing conduct fundamentally changed the nature of the work environment by

2    undermining Plaintiff's sense of well-being and affecting her ability to perform her job.

3        Moreover, Plaintiff sufficiently alleges such harassment was based on her gender.  Several

4    allegations are explicit in this regard.  "For example, as part of [a conference], Laskowski directed

5    Ms. Schouker to wear a wedding ring to 'keep prospects and customers focused,' reducing her to

6    an object for male clients rather than valuing her professional expertise."  (Dkt. No. 15 ¶ 54.)

7    Plaintiff also alleges her "male counterparts . . . did not experience the same level of dismissal or

8    professional undermining."  (*Id.* ¶ 56; *see also id.* ¶¶ 49, 50, 59, 61.)  So, the Court DENIES

9    Defendants' motion to dismiss Count Four against PolySwarm.

10                    **b.   Mr. Bassi in His Personal Capacity**

11        Defendants assert Plaintiff lacks a legal basis to sue Mr. Bassi in his personal capacity,

12    whereas Plaintiff argues the claim against Mr. Bassi survives because he is an alter ego of the

13    corporation.  In California, "[a] corporate identity may be disregarded—the 'corporate veil'

14    pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a

15    corporation liable for the actions of the corporation."  *Cam-Carson, LLC v. Carson Reclamation*

16    *Auth.*, 82 Cal. App. 5th 535, 549 (2022).  The alter ego doctrine may be invoked when two

17    conditions are met:  "First, there must be such a unity of interest and ownership between the

18    corporation and its equitable owner that the separate personalities of the corporation and the

19    shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in

20    question are treated as those of the corporation alone."  *Id.*

21        Plaintiff's allegations do not create an inference Mr. Bassi had a unity of interest with

22    PolySwarm.  (Dkt. No. 15 ¶¶ 20-25.)  Though Plaintiff alleges "[u]pon information and belief"

23    that "Polyswarm been [sic] and now are a mere shell that Bassi and Laskowski use as a conduit to

24    conduct personal business," (*id.* ¶ 21), she does not allege facts to support this conclusion.  And

25    the two specific allegations—that Mr. Laskowski paid Plaintiff's bonus and Ms. Black's salary out

26    of his personal funds (Dkt. No. 15 ¶¶ 24, 38 n.1)—relate to Mr. Laskowski's actions, not Mr.

27    Bassi's.  Further, Plaintiff does not allege facts that support a plausible inference she will suffer an

28    inequitable result if she is unable to pursue Count Four against Mr. Bassi in his personal capacity.

United States District Court
Northern District of California

11

Plaintiff's conclusory allegation that she "would be unable to collect on any judgment entered in her favor" because PolySwarm "is undercapitalized" is insufficient. *See Resh, Inc. v. Conrad*, No. 22-CV-01427-EJD, 2024 WL 4177944 at *4 (N.D. Cal. Sept. 11, 2024) (cleaned up) ("[D]ifficulty in enforcing a judgment or collecting a debt does not satisfy the inequitable results standard.").

So, the Court GRANTS Defendants' motion to dismiss Count Four against Mr. Bassi.

### 4.   FEHA Failure to Prevent Discrimination and Harassment (Count Six)

Count Six alleges Defendants failed to prevent discrimination and harassment in violation of Cal. Gov. Code § 12940(k).  Defendants argue "[s]ince Schouker's harassment and discrimination claims fail as a matter of law, Schouker cannot state a claim for failure to prevent harassment, either."  (Dkt. No. 39 at 24.)   As discussed above, Plaintiff plausibly alleges she was subjected to discrimination and harassment based on gender during her tenure at PolySwarm. Defendants make no other argument as to the sufficiency of Count Six.  So, the Court DENIES Defendants' motion to dismiss Count Six.

### 5.   FEHA Retaliation (Count Seven)

Count Seven alleges retaliation in violation of California Government Code § 12940(h). To establish a prima facie claim of retaliation under FEHA, plaintiffs must show:

> (1) They engaged in a protected activity;
>
> (2) they were subjected to an adverse employment action; and
>
> (3) there is a causal link between the protected activity and the
>
> adverse employment action.

*Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1252 (2008).  The causal link required by element three "may be established by an inference derived from circumstantial evidence." *Flores v. City of Westminster*, 873 F.3d 739, 749 (9th Cir. 2017).  Defendants contend Plaintiff does not plausibly allege a causal connection between Plaintiff's protected activity and an adverse action.  The Court agrees.

As an initial matter, the Court disregards Plaintiff's argument that "PolySwarm's refusal to accommodate her disability" constitutes protected activity.  (Dkt. No. 46 at 25.)  Plaintiff does not allege she engaged in protected activity when she requested time off; rather, Count Seven alleges

12

1    "[a]s a result of Plaintiff's *protest and opposition to the unlawful conduct of employees* of

2    Defendants, Defendants retaliated against Plaintiff by, among other things, diminishing her role in

3    the company, reducing her commissions, and discharging her." (Dkt. No. 15 ¶ 134 (emphasis

4    added).) So, the Court declines to address Plaintiff's arguments in her opposition brief about

5    requesting accommodations and taking time off for medical treatment as protected activity. *See*

6    *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining

7    the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a

8    plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to

9    dismiss.").

10            As to the protected activity of protesting and opposing the unlawful conduct of

11    Defendants' employees, the complaint is vague about when this occurred. In the section titled

12    "Defendants' Many Months of Gender Harassment Towards Ms. Schouker," Plaintiff alleges she

13    raised the issue of Mr. Laskowski's discriminatory conduct to Bassi and her complaints were

14    ignored. (Dkt. No. 15 ¶¶ 61-62.) But Plaintiff does not say when such conversation(s) occurred.

15    Plaintiff later alleges she "raised multiple concerns regarding gender and disability discrimination

16    to Bassi" including during "Bassi's multiple trips to Washington D.C." (*Id.* ¶¶ 81, 83.) But again,

17    Plaintiff does not provide dates. And Plaintiff's allegation that she "raised her concerns to Bassi

18    after Laskowski's demeaning comments at the 2024 RSA Conference" is also unspecific as to

19    when in 2024. (*Id.* ¶ 84.) That timing is important, as the alleged adverse actions occurred over

20    an eight-month period in 2024. Plaintiff alleges "Defendants retaliated against Plaintiff by, among

21    other things, diminishing her role in the company, reducing her commissions, and discharging

22    her." (Dkt. No. 15 ¶ 134.) Those alleged adverse actions occurred in June 2024, January 2024,

23    and August 2024, respectively. (*Id.* ¶¶ 72, 78, 92.) Because the complaint is vague about the

24    timing of her complaints and vague about the connection between such complaints and a series of

25    adverse employment action, the Court cannot determine whether temporal proximity supports an

26    inference of causation.

27            Plaintiff argues "temporal proximity is but one factor to be considered" in deciding

28    whether there is a causal connection. (Dkt. No. 46 at 25.) True, but Plaintiff does not direct the

United States District Court
Northern District of California

1    Court to other allegations which plausibly support a causation inference.  So, the Court GRANTS

2    Defendant's motion to dismiss Count Seven.

3              **6.  Intentional Infliction of Emotional Distress (IIED) (Count Eight)**

4        Defendants move to dismiss the IIED claim on the ground Plaintiff has not alleged conduct

5    of the extreme and outrageous nature required to support a claim of IIED. A claim for intentional

6    infliction of emotional distress is supported only where conduct by the defendant is extreme and

7    outrageous.  *Christensen v. Super. Ct*., 54 Cal.3d 868, 903 (1991).  Conduct is "outrageous" or

8    "extreme" when it "exceed[s] all bounds of that usually tolerated in a civilized society."

9    *Schneider v. TRW, Inc*., 67 F.Supp.3d 1091, 1099 (N.D.Cal.2014) (citation omitted).

10        Plaintiff alleges "[t]he conduct complained of above was outside the conduct expected to

11    exist in the workplace."  (Dkt. No. 15 ¶ 136.)  But the IIED cause of action fails to identify which

12    specific conduct was extreme and outrageous; instead, it incorporates by reference the allegations

13    of the complaint in their entirety.  And unlike other causes of action, there is no IIED subheading

14    in the complaint specifying the relevant allegations.  Relatedly, while all Defendants are named in

15    Count Eight, it is unclear which conduct supports a claim of IIED against which defendant.

16        Moreover, generally employer conduct—including derogatory remarks, humiliation, and

17    inadequate investigations into staff complaints—does not rise to the level of outrageousness

18    required to support a claim for IIED.  *See, e.g.*, *Lee v. S. of Mkt. Health Ctr.*, No. 19-CV-06482-

19    LB, 2020 WL 2219032 at *7-8; *Kelley v. The Conco Companies*, 196 Cal. App. 4th 191, 216

20    (2011); *Garamendi v. Golden Eagle Ins. Co*., 128 Cal. App. 4th 452, 480 (2005).

21        Because Plaintiff fails to plausibly allege extreme and outrageous conduct, the Court

22    GRANTS Defendants' motion to dismiss Count Eight as to both Defendants.

23              **7.  Count Nine: Negligent Infliction of Emotional Distress (NIED) (Count
24              Nine)**

25         "[N]egligent infliction of emotional distress is a form of the tort of negligence, to which

26    the elements of duty, breach of duty, causation and damages apply."  *Huggins v. Longs Drug*

27    *Stores Cal., Inc*., 6 Cal.4th 124, 129 (1993).  "The existence of a duty of care owed by a defendant

28    to a plaintiff is a prerequisite to establishing a claim for negligence."  *Nymark v. Heart Fed. Savs.*

1    & Loan Ass'n, 231 Cal.App.3d 1089, 1095 (1991).  Thus, "absent a duty, the defendant's care, or

2    lack of care, is irrelevant."  *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc*., 49 Cal.

3    App. 4th 472, 482 (1996).  "The existence of a legal duty to use reasonable care in a particular

4    factual situation is a question of law for the court to decide."  *Vasquez v. Residential Invs., Inc*.,

5    118 Cal.App. 4th 269, 278 (2004).

6         As a threshold matter, Plaintiff's reference to all the factual allegations in the complaint

7    and failure to specify which "conduct" gives rise to this claim is fatal to her NIED claim.  *See*

8    *Muse Brands, LLC v. Gentil*, No. 15-CV-01744-JSC, 2015 WL 4572975 at *11 (N.D. Cal. July

9    29, 2015).  Moreover, Plaintiff does not allege facts that support a plausible inference Defendants

10   owed Plaintiff a special duty.  Plaintiff's assertion that "all individuals have a duty to refrain from

11   negligent conduct that causes harm" misstates the law.  (Dkt. No. 46 at 27.)  Rather, under

12   California law, there is no general duty to avoid negligently causing emotional distress to another.

13   *Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965, 984 (1993).  As Plaintiff merely alleges "if

14   said conduct of Defendants, and of their agents and employees was not intentional, it was

15   negligent, and Plaintiff is thereby entitled to general damages for the negligent infliction of

16   emotional distress" (Dkt. No. 15 ¶ 140), she does not state an NIED claim.

17        So, the Court GRANTS Defendants' motion to dismiss Count Nine as to all Defendants.

18              **8.  Breach of Contract (Count Ten)**

19        Count Ten alleges PolySwarm breached Plaintiff's employment contract by failing to pay

20   her the required percentages on commission splits.  (Dkt. No. 15 ¶¶ 72, 144.)  Specifically,

21   Plaintiff alleges on July 21, 2022, "Plaintiff and defendant PolySwarm entered into an agreement.

22   . . memorialized in an email" amending her commission package.  (*Id.* ¶ 142.)  The agreement

23   provided for a "commission split of ten percent (10%) for direct deals and five percent (5%) for

24   partner deals."  (*Id.* ¶¶ 142, 143.)  Then, in January 2024, PolySwarm breached the agreement by

25   "significantly reduc[ing] Ms. Schouker's commission structure [and] slashing her commissions

26   from 5-10% to 0.7% for partner, direct, and renewal opportunities."  (*Id.* ¶ 72.)

27        In moving to dismiss, Defendants attach the July 21, 2022 email setting forth the

28   agreement Defendants are alleged to have breached.  (Dkt. No. 39-2.)  The Court considers the

United States District Court
Northern District of California

15

1    email under the incorporation by reference doctrine.  *See United States v. Ritchie*, 342 F.3d 903,

2    908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by

3    reference into a complaint if . . . the document forms the basis of the plaintiff's claim.").

4         Plaintiff cannot plausibly state a breach of contract claim based on the email.  "It is settled

5    that an employer may unilaterally alter the terms of an employment agreement, provided such

6    alteration does not run afoul of the California Labor Code." *Davis v. Nordstrom, Inc.*, 755 F.3d

7    1089, 1093 (9th Cir. 2014).  Further, "an employer may terminate or modify a contract with no

8    fixed duration period after a reasonable time period, if it provides employees with reasonable

9    notice." *Id.*  And "where an employee continues in his or her employment after being given notice

10   of the changed terms or conditions, he or she has accepted those new terms or conditions." *Id.*

11        Irrespective of whether the July 21, 2022 email is an enforceable agreement, the email did

12   not guarantee Plaintiff's commission structure would exist through a specific date or indefinitely.

13   In January 2024, PolySwarm started paying "Ms. Schouker only the reduced 0.7% commission on

14   deals she closed." (Dkt. No. 15 ¶ 74.)  Plaintiff continued working at PolySwarm through August

15   2024.  In so doing, Plaintiff  "accepted those new terms or conditions." *See Davis*, 755 F.3d at

16   1093.

17        Plaintiff's arguments to the contrary ignore settled precedent allowing employers to

18   unilaterally alter terms of an employment agreement.  *DiGiacinto v. Ameriko–Omserv Corp.*, 59

19   Cal.App.4th 629, 637 (1997) (an "employee who continues in the employ of the employer after

20   the employer has given notice of changed terms or conditions of employment has accepted the

21   changed terms and condition.").   "[A]s long as the employee continued in employment with

22   notice of the new terms, the employee has no action for breach of contract as a matter of law." *Id.*

23        So, the Court GRANTS Defendants' motion to dismiss Count Ten.

24   **9.  Declaratory Judgment (Count Eleven)**

25        In Count Eleven, Plaintiff "seeks a declaratory judgment that she did not violate her duties

26   of confidentiality and loyalty, or any related statutory duty, to PolySwarm." (Dkt. No. 15 ¶ 149.)

27   "In a case of actual controversy within its jurisdiction," courts "may declare the rights and other

28   legal relations of any interested party seeking such declaration, whether or not further relief is or

United States District Court
Northern District of California

16

could be sought." 28 U.S.C. § 2201(a).  In determining whether an actual controversy exists, a court considers "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Plaintiff's allegations do not satisfy the requirement for sufficient immediacy because it seeks a remedy for past actions.  "A declaratory judgment is not a corrective action, and therefore, it should not be used to remedy past wrongs."  *John M. Floyd & Assocs., Inc. v. First Imperial Credit Union*, No. 16-CV-1851 DMS (WVG), 2017 WL 4810223 at *5 (S.D. Cal. Oct. 25, 2017), aff'd, 771 F. App'x 840 (9th Cir. 2019).  Plaintiff "seeks a declaratory judgment that *she did not violate* her duties of confidentially and loyalty, or any related statutory duty, to PolySwarm." (Dkt. No. 15 ¶ 149 (emphasis added).)  So, as alleged, she does not seek to define legal rights and obligations in anticipation of some future conduct.  *See Seattle Audubon Soc. v. Moseley,* 80 F.3d 1401, 1405 (9th Cir. 1996) ("declaratory judgment offers a means by which rights and obligations may be adjudicated in cases 'brought by any interested party' involving an actual controversy that has not reached a stage at which either party may seek a coercive remedy.").  Because Plaintiff has not alleged a claim for declaratory relief for a controversy of sufficient immediacy, the Court GRANTS Defendants' motion to dismiss Count Eleven.

### 11.    Retaliation in Violation of California Labor Code (Count Twelve)

Plaintiff alleges whistleblower retaliation under Cal. Labor Code § 1102.5(b), which states an employer "shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee."  To make a prima facie case for whistleblower retaliation a plaintiff must demonstrate three elements:

(1) They engaged in a protected activity;

(2) they were subjected to an adverse employment action; and

(3) there is a causal link between the protected activity and the

adverse employment action.

17

1    *McVeigh v. Recology San Francisco*, 213 Cal. App. 4th 443, 468 (2013).

2         Plaintiff's allegations plausibly support an inference she experienced retaliation because

3    "she reported to Bassi her reasonable suspicion of PolySwarm's violations of federal law." (Dkt.

4    No. 15 ¶ 152.) Specifically, Plaintiff alleges as part of PolySwarm's contract with DHS,

5    PolySwarm was obligated to comply "with the Federal Acquisition Regulation (FAR) Clause

6    52.204- 23, which explicitly prohibits contracting for hardware, software, and services developed

7    or provided by Kaspersky Lab, a Russian entity, and includes the requirement that Federal

8    government contractors must also report any Kaspersky hardware, software, or services

9    discovered during contract performance." (*Id.* ¶ 63.) Because "PolySwarm's ecosystem included

10   an engine developed by Kaspersky . . . [,] Ms. Schouker flagged the issue immediately to Bassi,"

11   but he failed to take corrective action and instead "submitted the required DHS forms, falsely

12   affirming that PolySwarm had no connections to prohibited foreign entities, including Kaspersky."

13   (*Id.* ¶ 64.) In light of these allegations, Defendants' argument that Plaintiff has not alleged "what

14   suspicions of violations of federal law she reported to Bassi" is unpersuasive. (Dkt. No. 39 at 31.)

15        Moreover, Plaintiff plausibly alleges that in response to this protected activity, Defendants

16   retaliated through a series of adverse employment actions. Specifically, Plaintiff alleges in

17   January 2024—the same month she reported her concerns to Mr. Bassi—Mr. Laskowski

18   "significantly reduced Ms. Schouker's commission structure." (Dkt. No. 15 ¶ 72.) In spring 2024,

19   "Laskowski excluded Ms. Schouker from key discussions" about the 2024 DHS contract renewal

20   process. (Dkt. No. 15 ¶ 67.) In July 2024, "Laskowski reassigned the DHS account to" another

21   employee. (*Id.* ¶ 69.) And finally, in August 2024, PolySwarm fired Plaintiff. (*Id.* ¶ 90.)

22        Defendants' citation to *Choi v. Wal-Mart Assocs., Inc.*, No. 8:23-CV-02376-SB-KES, 2024

23   WL 5431492 (C.D. Cal. Nov. 25, 2024) is unavailing. In *Choi*, the district court held "Plaintiff's

24   serious misconduct on July 3, 2022—his refusal to leave Console's office for five hours, leading

25   to his removal by the police—defeats any causal inference that may be drawn from temporal

26   proximity." *Id.* *6. Defendants do not identify an analogous intervening event that defeats the

27   inference of temporal proximity in this case.

28        So, the Court DENIES Defendants' motion to dismiss Count Twelve.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss disability discrimination (Count Three), hostile work environment based on disability (Count Five), retaliation in violation of FEHA (Count Seven), IIED (Count Eight), NIED (Count Nine), breach of contract (Count Ten), and declaratory judgment (Count Eleven) with leave to amend. *See Bacon v. Woodward*, 104 F.4th 744, 753 (9th Cir. 2024) ("Leave to amend shall be freely given when justice so requires, and this policy is to be applied with extreme liberality.").  And the Court DENIES Defendants' motion to dismiss gender discrimination under Title VII and FEHA (Counts One and Two), hostile work environment based on gender (Count Four), failure to prevent discrimination (Count Six), and whistleblower retaliation (Count Twelve).

An amended complaint that attempts to plead the dismissed claims must be filed **by April 18, 2025.**  If no amended complaint is filed the case shall proceed on the non-dismissed claims. No new defendants or claims may be added without the Court's prior permission.

This Order disposes of Docket No. 39.

**IT IS SO ORDERED.**

Dated: April 3, 2025

JACQUELINE SCOTT CORLEY
United States District Judge